UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD WILSON,

        Plaintiff,

    v.

PIER 1 IMPORTS (US), INC;
and MELLON/PIER 1 PROPERTIES
LIMITED PARTNERSHIP I,

        Defendants.

_____/

NO. CIV. S-04-633 LKK/CMK

O R D E R

    Plaintiff, Ronald Wilson, a disabled individual, sues under the ADA and various state disability laws. He alleges accessibility violations in place at the Pier 1 Imports store in Fairfield, California. He seeks both injunctive and monetary relief. The parties have filed cross-motions for summary judgment. I resolve those motions below.[1]

_____

[1] Defendants also brought a motion for a prefiling order declaring plaintiff, and plaintiff's attorney, vexatious litigants, see Wilson v. Pier 1 Imports (US), Inc., 413 F.Supp.2d 1130 (E.D. Cal. 2006)), and a motion directed towards various asserted standing

1

**I.**

**FACTS**[2]

Wilson is a 69 year old male, who has been disabled since 1993.  Wilson Dec. in Supp. of Pl.'s Mot. for Summ. J. (Wilson Dec.) at ¶ 2; Dep. at 25:12-13; 33:20-21; 65:11-25; Pl.'s SUF 1[3]; Wilson Dec. at ¶ 3; Dep. at 115:5-8; 53:15-56:2.; Pl.'s SUF 2.  He has severe degenerative joint disease in his neck, legs, shoulders, and spine; irregular heartbeat; multi-joint arthritis; slight foot drop; and limited range of motion of upper extremities.  Wilson further suffers from gout, deafness, and peripheral neuropathy with symptoms of ALS (a.k.a. Lou Gehrig's Disease).  Wilson Dec. at ¶ 4; Dep. at 45:22-23; 46:17-18, 23-25; 60:22; Pl.'s SUF 3.  Wilson has no control over his muscles, which are deteriorating faster than doctors thought they would, and is forced to use either a wheelchair or cane (or combination of both) when traveling in public.  Wilson Dec. at ¶ 6; Dep. at 46:17; 53:19-55:2; 55:25-56:7; 47:4-12; Pl.'s SUF 5.  Wilson's condition will worsen over time.  Wilson Dec. at ¶ 7; Dep. at 48:19-21; Pl.'s SUF 6.

////

issues, <u>see</u> <u>Wilson v. Pier 1 Imports (US), Inc.</u>, 411 F.Supp.2d 1196 (E.D. Cal. 2006)).

[2]  All facts are undisputed except where noted.  The defendants have submitted a reply to plaintiff's response to defendants' separate statement of undisputed facts.  This submission is not authorized by the local rules, which only provide for the optional submission of an additional "statement of disputed facts" not a reply to an opposing parties' response.  <u>See</u> Local Rule 56-260.

[3]  Defendants do not dispute many of these facts purely for the "purposes of this motion."

1    Wilson has visited the store at issue approximately every two
2    or three months, Wilson Dec. at ¶ 9; Dep. at 123:17-124:15; Pl.'s
3    SUF 8, and purchased various items (viz., Lilian flutes, salt and
4    pepper racks, Ashlee Mugs).  These purchases were documented with
5    four receipts that he received during his visits of September 8,
6    2003, March 13, 2004, September 25, 2004, and January 30, 2005.
7    Wilson Dec. at ¶ 8; Dep. at 117:8-13; 123:17-19; Pl.'s SUF 7.
8    Overall, Wilson has made approximately 16 visits to the store since
9    September 8, 2003.  Wilson Dec. at ¶ 10; Pl.'s SUF 9.

10   Wilson was forced to roll over the threshold of the store's
11   entrance backwards with "a lot of expended energy and pain" to get
12   into the store.  Wilson Dec. at ¶ 13; Dep. at 145:9-19; Pl.'s SUF
13   12.  The curb ramp in existence at the time of Wilson's visits
14   projected into the access aisle and parking space, so his
15   wheelchair would roll away when Wilson tried to get into or out of
16   his vehicle.  Wilson Dec. at ¶ 20' Dep. at 149:25-150:9.  The ramp
17   also "came down too fast," so he had to use extra energy stopping
18   his wheelchair, or risk hitting his car.  Wilson Dec. at ¶ 21; Dep.
19   at 150:11-18; 151:7-13.  Wilson has never fallen off the ramp at
20   the store though he claims the risk is real.  Wilson Dec. at ¶ 23;
21   Dep. at 134:17-19.

22   For the purposes of the ADA, the store was "constructed" in
23   1989.  Hubbard Dec. in Supp. of Pl.'s Mot. For Summ. J. (Hubbard
24   Dec.) at ¶ 4.  It has not been altered, as defined under the ADA
25   and the CBC, since it opened.
26   ////

3

1    Pier 1 operates and leases the property.  Mellon/Pier 1

2   Properties Limited Partnership I owns the property.  <u>See</u> Pier 1's

3   Response to Request for Admission No. 1 and Mellon's Response to

4   Request to Admission No. 1, attached as Exhibit 1 to Declaration

5   of Lynn Hubbard, III.  Pier One admits that portions of the store

6   are considered public accommodations under the ADA.  Hubbard Dec.

7   at ¶ 3.

8    Plaintiff always drove to the facility and parked in the

9   accessible parking spaces; he did not access the Store via public

10  streets, sidewalks, or public transportation.  Plaintiff's vehicle

11  was not towed.  Pl.'s Dep. at 114:17-116:5, 153:7-9, 229:9-230:2;

12  Samsel Dec., Ex. A.  Plaintiff never had a problem to report

13  pertaining to accessible parking at the Store.  Pl.'s Dep. at

14  142:3-12; Samsel Dec., Ex. A.  The Store is all one open space.

15  Blackseth Report, page 12.  The Store does not provide restrooms

16  to the public.  <u>Id.</u> at 12-13.

17                            **II.**

18                          **STANDARDS**

19   Summary judgment is appropriate when it is demonstrated that

20  there exists no genuine issue as to any material fact, and that the

21  moving party is entitled to judgment as a matter of law.  Fed. R.

22  Civ. P. 56(c); <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

23  157 (1970); <u>Secor Limited v. Cetus Corp</u>., 51 F.3d 848, 853 (9th

24  Cir. 1995).

25  ////

26  ////

1      Under summary judgment practice, the moving party

2           [A]lways bears the initial responsibility of
            informing the district court of the basis for
3           its motion, and identifying those portions of
            "the pleadings, depositions, answers to
4           interrogatories, and admissions on file,
            together with the affidavits, if any," which
5           it believes demonstrate the absence of a
            genuine issue of material fact.

6

7  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

8  nonmoving party will bear the burden of proof at trial on a

9  dispositive issue, a summary judgment motion may properly be made

10 in reliance solely on the 'pleadings, depositions, answers to

11 interrogatories, and admissions on file.'"  Id.  Indeed, summary

12 judgment should be entered, after adequate time for discovery and

13 upon motion, against a party who fails to make a showing sufficient

14 to establish the existence of an element essential to that party's

15 case, and on which that party will bear the burden of proof at

16 trial.  See id. at 322.  "[A] complete failure of proof concerning

17 an essential element of the nonmoving party's case necessarily

18 renders all other facts immaterial."  Id.  In such a circumstance,

19 summary judgment should be granted, "so long as whatever is before

20 the district court demonstrates that the standard for entry of

21 summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

22 at 323.

23     If the moving party meets its initial responsibility, the

24 burden then shifts to the opposing party to establish that a

25 genuine issue as to any material fact actually does exist.

26 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5

1  586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

2  391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

3      In attempting to establish the existence of this factual

4  dispute, the opposing party may not rely upon the denials of its

5  pleadings, but is required to tender evidence of specific facts in

6  the form of affidavits, and/or admissible discovery material, in

7  support of its contention that the dispute exists.  Fed. R. Civ.

8  P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

9  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

10 1998).  The opposing party must demonstrate that the fact in

11 contention is material, i.e., a fact that might affect the outcome

12 of the suit under the governing law, Anderson v. Liberty Lobby,

13 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

14 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

15 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

16 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

17 i.e., the evidence is such that a reasonable jury could return a

18 verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

19 also Cline v. Industrial Maintenance Engineering & Contracting Co.,

20 200 F.3d 1223, 1228 (9th Cir. 1999).

21     In the endeavor to establish the existence of a factual

22 dispute, the opposing party need not establish a material issue of

23 fact conclusively in its favor.  It is sufficient that "the claimed

24 factual dispute be shown to require a jury or judge to resolve the

25 parties' differing versions of the truth at trial."  First Nat'l

26 Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

6

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>see also</u> <u>International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); <u>See also</u> <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1093 (9th Cir. 1999). The evidence of the opposing party is to be believed, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>See also</u> <u>Headwaters Forest Defense v. County of Humboldt</u>, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a

1 whole could not lead a rational trier of fact to find for the

2 nonmoving party, there is no 'genuine issue for trial.'"

3 Matsushita, 475 U.S. at 587 (citation omitted).

**III.**

**ANALYSIS**

**A.   THE ADA**

Title III of the ADA prohibits discrimination against

individuals on the basis of disabilities in the full and equal

enjoyment of the goods, services, facilities, privileges,

advantages or accommodations of any place of public accommodation.

See 42 U.S.C. § 12182(a).  Title III defines "discrimination" as,

among other things, a failure to remove "barriers . . . where such

removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv);

Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th

Cir. 2002).

In order to make a prima facie case under Title III of the

ADA, a plaintiff must prove that (1) he has a disability, (2)

defendants' facility is a place of public accommodation, (3) and

he was denied full and equal treatment because of his disability.

To succeed on a ADA claim of discrimination on account of an

architectural barrier, the plaintiff must also prove that (1) the

existing facility at the defendants' place of business presents an

architectural barrier prohibited under the ADA, and (2) the removal

of the barrier is readily achievable.  See 42 U.S.C.

§ 12182(b)(2)(A)(iv); Hubbard v. Twin Oaks Health and

Rehabilitation Center, 408 F.Supp.2d 923, 929 (E.D. Cal. 2004).

1  If plaintiff satisfies his burden, the burden shifts to the

2  defendant to show that removal of the barriers is not readily

3  achievable.

4     **1.   <u>What Constitutes a Barrier?</u>**

5     Defendants contest each one of the alleged barriers raised by

6  plaintiff.  For each one they claim that no barrier exists because

7  plaintiff's access was not hindered.  As I explain below,

8  defendants' narrow reading of barrier is unwarranted.

9     The ADA does not define what constitutes an architectural

10  barrier for facilities construction prior to 1993.  Compliance with

11  the ADAAG standards is requisite for recent construction.  <u>See</u> 28

12  C.F.R. Pts. 36.401 & 36.406.  These standards, however, do not

13  definitively establish the existence of an architectural barrier

14  for the Pier 1 store in question as it was constructed prior to

15  1993 and has not been altered since then.  Plaintiff bears the

16  burden of demonstrating that the barriers exist and that removal

17  of the barriers is readily achievable.  42 U.S.C.

18  § 12182(b)(2)(A)(iv); <u>Pickern v. Holiday Quality Foods Inc.</u>, 293

19  F.3d 1133, 1135 (9th Cir. 2002); <u>Hubbard</u>, 408 F.Supp.2d at 929.

20  Nonetheless, the ADAAG standards "provide valuable guidance for

21  determining whether an existing facility contains architectural

22  barriers."  <u>White v. Cinemark USA, Inc.</u>, 2005 WL 1856495, *3 (E.D.

23  Cal. 2005) (Burrell, J.); <u>Access Now, Inc. v. South Florida Stadium

24  Corp.</u>, 161 F.Supp.2d 1357, 1368 (S.D. Fla. 2001) (<u>quoting</u> <u>Pascuiti</u>

25  <u>v. New York Yankees</u>, 87 F.Supp.2d 221, 226 (S.D.N.Y. 1999)); <u>D'Lil</u>

26  <u>v. Stardust Vacation Club</u>, 2001 WL 1825832, *4 (E.D. Cal. 2001)

(Levi, J.)(also citing a DOJ letter which opined that "any element in [an existing] facility that does not meet or exceed ADAAG standards [is] a barrier to access.").

The presence of structures or other obstacles which do not meet the AADAG standards does not alone make a prima facie ADA violation for facilities built before 1993 because they must also show that the barrier removal is readily achievable. See 36 C.F.R. Pt. 36.304. However, non compliance with ADAAG standards can demonstrate a prima facie barrier, which the defendants may rebut by demonstrating that, despite the non-conformance with the guidelines, the alleged barrier is not actually hindering equal access by the plaintiff. See, e.g., White, 2005 WL 1856495 at *4 (citing Access Now, 161 F.Supp.2d at 1367).

Plaintiff also relies on the 1987 version of the California Building Code (CBC) which the parties agree was in place when the facility was constructed. It is clear that, at a minimum, the facility had an obligation to be in compliance with those standards. Presence of a violation of those standards could thus also constitute a barrier. Given that all the barriers discussed below rely on either the ADAAG or CBC standards, the court need not reach the question of the applicability, inter alia, of the American National Standards Institute (ANSI) standards.[4]  I now

---

[4]  For this reason, the court must reject defendants' argument that Joe Card's expert report is unreliable.  The objection appears to rely on the erroneous belief that there is only one "correct" way to identify barriers, although defendants never identify what standard they actually believe is applicable.

1  turn to the parties' arguments.

2      Defendants assert that "a 'barrier' is a condition that

3  hinders a disabled person from accessing goods and services at a

4  facility." Defs.' Mot. for Summ. J. at 10 (citing Access Now, 161

5  F. Supp. 2d at 1367, 1370 and other cases). They maintain that

6  plaintiff was not hindered by the alleged barriers because they did

7  not entirely prevent his access to the Store. They note that

8  plaintiff has been able to successfully enter the store, browse

9  and/or purchase items and then exit the store on approximately 16

10  separate occasions. They assert that if the purported barriers did

11  not stop plaintiff from visiting the facility, or will not deter

12  him from visiting in the future that they could not be barriers.

13      Clearly, this argument cannot prevail as a matter of plain

14  English usage. The American Heritage Dictionary defines hinder as

15  (1) "to be or get in the way of"; or (2) "to obstruct or delay the

16  progress of" or "to interfere with action or progress." The

17  American Heritage Dictionary of the English Language, Fourth Ed.,

18  Houghton Mifflin Company (2000). Put directly, a barrier need not

19  have completely blocked or forever deterred the plaintiff,

20  hindrance suffices. Moreover, defendants utterly misconstrue the

21  court's decision in Access Now, Inc. v. South Florida Stadium

22  Corp., 161 F.Supp. 2d at 1369. Defendants represent that the case

23  held that the "court should only analyze 'removal of a barrier that

24  actually denies disabled persons access . . . ." In fact, the

25  court used that phrase quite differently stating: "For example,

26  removal of a barrier that actually denies disabled persons access

11

1   to an element of the accommodation would be greatly effective and

2   the court would be justified in imposing a costly injunction,

3   provided that the cost is proportionate to the benefit it offers."

4   Id. at 1369.  In no way was the Access Now court limiting ADA

5   violations to those barriers which completely deny the plaintiff

6   access.[5]

7        The apparently deliberate indifference of defendants to their

8   obligations under the ADA is manifest.  In one of the more

9   egregious examples, defendants claim that the design of the door

10  was not a barrier to plaintiff because someone else opened the door

11  for him when he visited the store.  This is exactly the sort of

12  situation the ADA seeks to prevent: the need for a disabled person

13  to rely upon the help of more able bodied persons in order to go

14  about day-to-day activities.  Wilson, 413 F.Supp.2d at 1130.  Put

15  differently, the fact that plaintiff was able to overcome the

16  physical obstacles that he faced while in Pier 1 in no way suggests

17  that the Store is not in violation of the law.

18       **2.   When is Barrier Removal Readily Achievable?**

19  The ADA provides that:

20       The term "readily achievable" means easily
         accomplishable and able to be carried out without much
21       difficulty or expense. In determining whether an action
         is readily achievable, factors to be considered include–
22
23       (A) the nature and cost of the action needed under this

24  [5]  Even if defendants' misconstruction were accurate, the court
     would be required to reject the assertion.  The clear purpose of
25   the ADA is to provide equal access, not just any access.  See
     Wilson v. Pier 1 Imports (US), Inc., 413 F. Supp.2d 1130 (E.D. Cal.
26   2006).

chapter;
(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.A. § 12181(9); see also 28 C.F.R. Pt. 36.304(a). Clearly, this is not a bright line rule, but rather involves a "fact intensive inquiry that will rarely be decided on summary judgment." White v. Divine Investments, Inc., 2005 WL 2491543, *6 (E.D. Cal. 2005) (Damrell, J.).

It is plaintiff's burden to demonstrate that barrier removal is readily achievable. Id.; Pascuiti v. New York Yankees, 87 F.Supp.2d 221 (S.D.N.Y. 1999); Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I, 264 F.3d 999, 1002 (10th Cir. 2001). In the matter at bar, plaintiff's expert has provided a report which includes a "Cost Analysis for Retrofit per Plans for Barrier Removal." Plaintiff does not provide any analysis of why these cost should be considered reasonable, or "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. Pt. 36.304. He claims that all "a plaintiff must do is present evidence that a suggested method of barrier removal" meets the standard.

1    Defendants maintain that the changes proposed by the
2  plaintiff are not the minimal and small costs that Congress had in
3  mind.  They do not, however, provide any rebuttal design or cost
4  estimates.  Instead, they spend most of their argument disputing
5  the quality of the Card declaration.  They question whether the
6  Card declaration took into account various factors besides the
7  cost, including whether the proposed changes would comply with the
8  applicable codes and regulations, whether the changes would be
9  approved by the City of Fairfield, etcetera.

10    The state of the record is disheartening.  In sum, neither
11  party has addressed the statutory standards.

12  **B.   UNRUH AND DISABLED PERSONS ACT VIOLATIONS**

13    In addition to seeking relief under the ADA, the plaintiff has
14  also brought suit under the Unruh Act, a state statute which
15  provides that damages may be awarded if defendants are found to
16  have violated § 51 of the California Civil Code.  Cal. Civ. Code
17  § 52(a).  Section 51 provides that:

18     All persons within the jurisdiction of this state are
       free and equal, and no matter what their sex, race,
19     color, religion, ancestry, national origin, disability,
       or medical condition are entitled to the full and equal
20     accommodations, advantages, facilities, privileges, or
       services in all business establishments of every kind
21     whatsoever.

22  Cal. Civ. Code § 51(b). It further provides that a "violation of
23  the right of any individual under the Americans with Disabilities
24  Act of 1990 (Public Law 101-336) shall also constitute a violation
25  of this section."  Cal. Civ. Code § 51(f).
26  ////

14

1    Absent a violation of the ADA, plaintiff must prove that Pier

2  1 engaged in intentional discrimination.  Harris v. Capital Growth

3  Investors XIV, 52 Cal.3d 1142, 1175 (1991)("we hold that a

4  plaintiff seeking to establish a case under the Unruh Act must

5  plead and prove intentional discrimination in public accommodations

6  in violation of the terms of the Act."); Lentini v. California

7  Center for the Arts, 370 F.3d 837, 847 (9th Cir. 2004) (Holding

8  that no showing of intentional discrimination is required under the

9  Unruh Act when the violation is premised on an ADA violation.).

10  Neither plaintiff nor defendants have provided any briefing on

11  whether there is intentional discrimination sufficient to establish

12  an Unruh Act violation for the barriers listed above.  Thus,

13  liability turns on the ADA.

14    Plaintiff's complaint also seeks relief under the state's

15  Disabled Persons Act (DPA), Cal. Civ. Code §§ 54 et seq.  This

16  statue also provides that a violation of the ADA constitutes a

17  violation of the DPA.  Cal. Civ. Code § 54.1(d).  Under the DPA,

18  however, there is no requirement that the plaintiff show

19  intentional discrimination in order to demonstrate a violation of

20  its provisions.  Organization for Advancement of Minorities with

21  Disabilities v. Brick Oven Restaurant, 406 F.Supp.2d 1120 1129-30

22  (S.D. Cal. 2005)(holding that "a showing of intent to discriminate

23  is not required to obtain damages under the California DPA.")

24  (citing Donald v. Café Royale, Inc., 218 Cal.App.3d 168, 177-180

25  (1990)); Lonberg v. City of Riverside, 300 F.Supp.2d 942, 951 (C.D.

26  Cal. 2004)(explaining how subtle differences in the language of the

1  DPA and Unruh lead to different requirements with regards to

2  discriminatory intent); Hankins v. El Torito Restaurants, Inc., 63

3  Cal.App.4th 510, 520 n. 4 (1998).  Neither party in this case has

4  briefed the merits of a DPA violation outside of the context of a

5  plain ADA violation.

6      Both state statutes provide for monetary damages for

7  accessibility violations.  Under the Unruh Act, a plaintiff can

8  recover statutory damages in the amount of three times the actual

9  damages, but in no case less than $4,000.00 "for each and every

10  offense."  Cal. Civ. Code § 52(a).  The California DPA likewise

11  allows for damages in the amount three time the actual damages, but

12  in no case less than $1,000.00 "for each offense."  Cal. Civ. Code

13  § 54.3.  Neither of the statutes require that the party demonstrate

14  actual damages if they wish to simply collect the statutory

15  minimum.  Brick Oven Restaurant, 406 F.Supp.2d at 1129-30 (citing

16  Botosan, 216 F.3d 827 and Koire v. Metro Car Wash, 40 Cal.3d 24

17  (1985)).  Under the state's statutory scheme a defendant cannot be

18  held liable for damages pursuant to both the DPA and the Unruh Act

19  for the same barrier.  See Cal. Civ. Code § 54.3; and see Brick

20  Oven Restaurant, 406 F.Supp.2d at 1130.

21      Finally, plaintiff has also brought a claim under Health and

22  Safety Code Part 5.5, and the Business and Professions Code

23  §§ 17200 et seq.[6]  Again, none of these claims have been briefed

24  _____

25  [6]  Plaintiff also sought damages for negligence per se, but during
    a hearing before Magistrate Judge Kellison, plaintiff stipulated
    that he was only seeking statutory damages, effectively dismissing
26  that claim.  Order filed March 28, 2005 at 1.

1  and thus the court is unable to make any determination with respect

2  to them.

3      Defendants ask the court to decline to exercise subject

4  matter jurisdiction over the state law claims.  A number of courts

5  have done so, but usually where there were no ADA violations

6  remaining.  See Wander v. Kaus., 304 F.3d 856, 858 (9th Cir. 2002);

7  Pickern v. Best Western Timber Cove Lodge Marina Resort, 194

8  F.Supp.2d 1128, 1133 (E.D. Cal. 2002)(Shubb, J.)("Under 28 U.S.C.

9  § 1367(c)(3), the court has discretion to dismiss state law claims

10 when it has dismissed all of a plaintiff's federal claims.").

11 Since the court has found summary judgment for plaintiff

12 appropriate as to at least one barrier, it is necessary for the

13 court to exercise jurisdiction for remedial purposes.  Thus,

14 declining jurisdiction is inappropriate.[7]  Since the court has

15 not lost the head of federal jurisdiction, there appears to be no

16 principled justification for declining jurisdiction.  See Grove v.

17 De La Cruz, 407 F.Supp.2d 1126, 1133 (C.D. Cal. 2005).

18 **C.   SPECIFIC BARRIERS**

19      Below, I discuss each of the barriers which plaintiff has

20 raised in his motion for summary judgment.  The complaint also

21 raised a number of issues which plaintiff has not addressed in his

22 motion for summary judgment.  Along with the obvious fact that he

23 has moved for summary judgment and not partial adjudication,

24

---

25 [7]  Moreover, declining jurisdiction at this stage would be
26 inappropriate in any event, given the amount of judicial resources
   the court has expended in resolution of the instant motion.

17

1  plaintiff has also waived his ability to raise these issues by
2  stating in various places that it is "[u]ndisputed that the pending
3  motion for summary judgment addresses the currently known
4  architectural barriers from the store." <u>See</u>, <u>e.g.</u>, Pl.'s Resp. to
5  Defs.' SUF at ¶¶ 16, 38, 56, 63.  Plaintiff further states that it
6  is "[u]ndisputed that Card identified all of the violations that
7  existed at the facility during his inspection" in response to
8  defendants' note that plaintiff's expert report failed to address
9  a number of specific allegations, and that Mr. Card testified that
10 he was aware of no violations not listed in his report.  <u>See</u>, <u>e.g.</u>,
11 <u>id.</u> at ¶¶ 41, 59, 84.  The court therefore grants summary judgment
12 to defendants on all other purported barriers raised in their
13 motion for summary judgment which were not identified in
14 plaintiff's motion.

15     Before addressing the motions, the court will briefly address
16 certain defenses raised by defendant.  Defendants, <u>inter alia</u>,
17 alleged that plaintiff's complaint was a form which was not drafted
18 with particularity in regard to this facility.  That allegation in
19 no way prevented defendants from repeatedly raising in response to
20 each barrier alleged by plaintiff two clearly meritless defenses.
21 First, they assert as to each barrier that it is not actionable
22 because, despite the barrier, plaintiff was able to enter the
23 facility, and that as to each barrier plaintiff applied an
24 inapplicable standard.  This argument is faulty, as explained
25 above.  The latter claim is also erroneous, as discussed above,
26 because it confuses the finding of a barrier and the "readily

achievable" standard.  Defendants do not point to other standards
which contradict the ADAAG or CBC citations provided.  As it has
already addressed these two defenses, the court will make no
further consideration of the "no barrier" or "inapplicable
standards" arguments in this order.

       **1.  <u>Accessible Parking Spaces and Access Aisles</u>**

     Plaintiff sets out a number of arguments about the condition
of the accessible parking lot, spaces and their access aisles.
Each will be addressed separately.

         **a.   <u>Tow-Away Signage</u>**

     Plaintiff argues that the store lacks a sign at the entrance
to the off street parking facility (or in front of each accessible
parking stall) which warns that "unauthorized vehicles not
displaying distinguishing placards or license plates issued for the
physically disabled persons may be towed away at the owner's
expense."  Pl.'s Mot. for Summ. J. at 5.  This issue is raised in
the addendum to the complaint as items numbers two and three.  The
expert report submitted by plaintiff refers to the 1987 CBC
requirement 2-7102(e) that each parking space have a sign which
designates that unauthorized vehicles will be towed and which
includes the ISA designation.  Defendants do not explain why the
1987 CBC, the 2001 CBC and/or the ADAAG, all of which require the
signs, are inapplicable.  The contention appears frivolous.

     It appears from the pictures provided by plaintiff that the
sign did not exist at the time his expert visited the store.  <u>See</u>
Card Dec., First Photo (they are not numbered).  Defendants have

1  provided no evidence to demonstrate this was not a barrier, and

2  there is no evidence to counter that it once existed.  Thus, the

3  court finds this to be a barrier.

4      Defendants claim that fully compliant tow-away signage is now

5  provided, citing their expert report.  Blackseth Report at 10.

6  Plaintiff disputes that, but only by citation to his expert report

7  which is now dated.  Card Dec. at ¶ 7(a).  Rule 56(e) provides

8  that:

9          When a motion for summary judgment is made and supported
           . . . an adverse party may not rest upon the mere
10         allegations or denials of the adverse party's pleading,
           but the adverse party's response, by affidavits or as
11         otherwise provided in this rule, must set forth specific
           facts showing that there is a genuine issue for trial.
12         If the adverse party does not so respond, summary
           judgment, if appropriate, shall be entered against the
13         adverse party.

14 Here, plaintiff's response is insufficient because it does not

15 adequately counter defendants' expert report which avers that a

16 fully compliant tow sign is now provided.  Since the ADA only

17 provides for injunctive relief, if the barrier has already been

18 remedied, the issue becomes moot under the ADA, unless there is

19 some evidence that the violation is likely to re-occur.  See Grove

20 v. De La Cruz, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005); Friends

21 of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167,

22 190 (2000); Renne v. Geary, 501 U.S. 312, 320-21 (1991).[8]

23 Therefore, the court concludes that the issue is moot for the

24 purposes of the ADA.  However, the claim is not moot under the

25 _____

26 [8]  Plaintiff makes no showing concerning a future violation.

20

1  Unruh Act or the DPA since damages are still available, and thus

2  the court is obligated to complete the ADA analysis. <u>Grove</u>, 407

3  F.Supp.2d at 1131.

4      Having found a barrier, the next step is determining whether

5  the removal of the barrier is readily achievable.  Given that the

6  barrier has already been removed, the court must find that it was

7  readily achievable, and thus that it violated the ADA and

8  subsequently the Unruh Act and the DPA.

9      In sum, the court finds that the barrier existed, cure was

10  readily achievable, and therefore the barrier violated the ADA, the

11  Unruh Act and the DPA.

12            **b.**   **Sign for Each Accessible Parking Space**

13      Plaintiff claims that accessible parking spaces must be

14  reserved with a sign showing the ISA, citing the ADAAG § 4.6.4 and

15  1987 CBC 2-7102(e).  This is raised in plaintiff's complaint as

16  item 3(a).  Defendants again claim that compliant tow-away signage

17  is now provided.

18      ADAAG § 4.6.4 provides that "Accessible parking spaces shall

19  be designated as reserved by a sign showing the symbol of

20  accessibility.  <u>See</u> 4.30.7.  Spaces complying with 4.1.2(5)(b)

21  shall have an additional sign "Van-Accessible" mounted below the

22  symbol of accessibility.  Such signs shall be located so they

23  cannot be obscured by a vehicle parked in the space."  Card's

24  report refers to the 1987 CBC's requirement 2-7102(e) that each

25  parking space have a sign which designates that unauthorized

26  ////

1  vehicles will be towed and which includes the ISA designation.[9]

2  Once again, defendants have not provided any convincing argument

3  as to why the absence of requisite signage is not a barrier.

4  Defendants' expert reports that the appropriate signs are provided,

5  and given that it is more recent in time than plaintiff's report,

6  the court must conclude that defendants have cured the defect,

7  mooting the ADA claim.[10]   Once again, however, for the same

8  reasons noted above, the state claims are not moot and the court

9  grants summary judgment to plaintiff under those.

10          **c.  Size of Accessible Stalls**

11          Plaintiff's motion for summary judgment claims that the

12  "[s]ingle accessible stalls constructed in 1987 must be 108 inches

13  wide, and have a 96-inch wide access aisle.  Both must be level,

14  with surface slopes not exceeding 1:150 (2%) in all directions.  And

15  any vertical change in level must not exceed half-an-inch (½")."

16  Pl.'s. Mot. for Summ. J. 5.

17          This barrier was not raised in the complaint nor has plaintiff

18  moved to amend the complaint to add it, although it is identified

19  in the plaintiff's expert report.  As I now explain, these facts

20  in no way represent defects preventing the court's consideration

21  of plaintiff's claim.

22

23  [9]  Plaintiff's motion for summary judgment on the earlier question
of tow-away signs at the entrance for some reason states that "a
24  sign must be posted at the entrance to the off street parking
facility (or in front of each accessible parking stall)."  The 1987
25  CDC, however, clearly requires signs in *both* locations.

26  [10]  Again, given that defendant's cured the deficiency, there is
no reason to conclude that cure was not readily achievable.

1    It is beyond dispute that Rule 8 of the Federal Rules of Civil

2  Procedure sets out a liberal pleading standard which applies in

3  every civil case not addressed by Rule 9, unless Congress has

4  specifically directed otherwise.  Galbraith v. County of Santa

5  Clara, 307 F.3d 1119, 1124-26 (9th Cir. 2002)(confirming that

6  heightened pleading standards may not be set out by judicial

7  interpretation, rather "federal courts and litigants must rely on

8  summary judgment and control of discovery to weed out unmeritorious

9  claims sooner rather than later")(citing Leatherman v. Tarrant

10 County Narcotics Intelligence & Coordination Unit, 507 U.S. 163

11 (1993); Crawford-El v. Britton, 523 U.S. 574 (1998) and

12 Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

13   Liberal pleading standards do not require that the plaintiff

14 identify each individual ADA violation in the initial complaint.[11]

15 See Parr v. L & L Drive-Inn Rest., 96 F.Supp.2d 1065, 1083 (D. Haw.

16 2000); Independent Living Resources v. Oregon Arena Corporation,

17 982 F.Supp. 698, 770 (D. Or. 1997).  Of course, defendants may,

18 during the course of the litigation, require plaintiff to supply

19 them with a fair apprisal of his contentions.  Id.  This can be

20 accomplished through the exchange of expert reports, through

21 contention interrogatories, a motion to amend, or through the

22 procedures applicable to motions for summary judgment.

23 Swierkiewicz, 534 U.S. at 512 ("This simplified notice pleading

24

25 [11]  Fed. R. Civ. P. 8(a) only requires "a short and plain statement
   of the claim showing that the pleader is entitled to relief."  See
   also Feezor v. Chico Lodging, LLC, __ F.Supp.2d __, 2006 WL 488153,
26 *3 (E.D. Cal. 2006).

standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").

In the matter at bar, plaintiff provided an initial list of specific violations in the complaint, and subsequently provided further violations in the expert report, the plaintiff's motion for summary judgment moves only on items which were identified in the expert report and/or the complaint.[12]  It is plain that defendants have been fairly apprised of the alleged existence of the barrier. Thus, the court now turns to plaintiff's contentions.

It appears that the 96-inch wide access aisle requirement is found in the ADAAG at 4.1.2, while the 108 inch requirement comes from the 1987 CBC at 2-7102(B).  Plaintiff claims that the "store's access aisle is 62 inches wide" and "the accessible parking stall is only 102 ½-inches wide."  Id.  Plaintiff's expert report demonstrates the inadequate size of the space, and defendants' report does not contradict that.  Defendants claim that the "the disabled parking space was replaced by two new disabled parking spaces."  Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 19.  Thus, summary judgment must be granted for defendants as to the ADA claim, as it appears the issue is mooted by defendants' conduct.

As explained above, the claim is not moot, however, under the Unruh Act or the DPA and thus the court must determine whether

---

[12]  There was also ample time in the course of this litigation for the defendant to request a more specific statement, but none was sought.

1  the removal of the barrier was readily achievable.  Given that the

2  barrier has already been removed, the court must find that it was

3  readily achievable, and thus that it violated the ADA and

4  subsequently the Unruh Act and the DPA.

5              **d.  <u>Slope of Space is too great</u>**

6        Plaintiff claims that the accessible parking space exceeds the

7  slope permitted by the ADAAG §§ 4.5.2[13], 4.6.3[14] and 1987 CBC 2-

8  7102(d).[15]  He claims that the slope is 3.6%, with a cross slope

9  between 2.8% and 3.2% and an abrupt, vertical changes of 2 inches

10 (without a ramp). . . ."  Pl.'s Mot. for Summ. J. at 5-6.

11 Plaintiff cites to his expert report, which includes a photograph.

12       Defendants claim that the barrier does not now exist because

13 "the disabled parking space was replaced by two new disabled

14 parking spaces."  Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 25.

15 ////

16 _____

17 [13]  4.5.2 Changes in Level: "Changes in level up to 1/4 in (6 mm)
   may be vertical and without edge treatment (see Fig. 7(c)). Changes
18 in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be
   beveled with a slope no greater than 1:2 (see Fig. 7(d)).  Changes
19 in level greater than 1/2 in (13 mm) shall be accomplished by means
   of a ramp that complies with 4.7 or 4.8."
20
   [14]  4.6.3 Parking Spaces: "Accessible parking spaces shall be at
21 least 96 in (2440 mm) wide.  Parking access aisles shall be part
   of an accessible route to the building or facility entrance and
22 shall comply with 4.3.  Two accessible parking spaces may share a
   common access aisle (see Fig. 9).  Parked vehicle overhangs shall
23 not reduce the clear width of an accessible route.  Parking spaces
   and access aisles shall be level with surface slopes not exceeding
24 1:50 (2%) in all directions."

25 [15]  Slope of parking space: "Surface slopes of parking spaces for
   the physically handicapped shall be the minimum possible and shall
26 not exceed 1/4-inch per foot (2.083% gradient) in any direction."

                                   25

1   They do not dispute that the original space was actually too steep.

2   The court thus finds that a barrier existed.  Summary judgment must

3   be granted for defendants, as it appears the issue is moot for the

4   purposes of the ADA if the proper parking spaces are now in place.

5   For the same reasons noted above, the state claims are not mooted,

6   and the court must again consider whether cure was readily

7   achievable.  Once again, given defendants' conduct, the court

8   concludes that it was and thus that it violated the ADA and

9   subsequently the Unruh Act and the DPA.

10              **e.  <u>The Ramp Protrudes into Aisle</u>**

11       Plaintiff claims that the ramp which serves the accessible

12   parking space protrudes into the access aisle and thus violates

13   ADAAG § 4.6.3 by creating too extreme of a slope for the aisle.

14   Plaintiff cites to his expert report, which includes a photograph.

15   This issue was raised in the complaint by item 7(a) of the survey

16   of access code violations.

17       Defendants cite to their expert report, and plaintiff states

18   that it is "unknown" whether a new ramp has been installed and

19   contend that "[i]f this change occurred after Wilson's Rule 56(f)

20   site inspection, then a second inspection is needed."  Pl.'s

21   Resp. to Defs.' SUF 53.  Unfortunately for plaintiff, discovery has

22   closed and no further 56(f) delays are appropriate.  Thus, summary

23   judgment must be granted for defendants on this issue as it is

24   moot, the state of the record being that a ramp has been installed

25   and the parking spaces are in compliance with the ADAAG and recent

26   CBC standards.  Accordingly, the court concludes that the claim is

moot under the ADA, that the correction was readily achievable and violation of the state claims is not moot.

### 3. <u>Curb Ramps</u>

Plaintiff claims that the curb ramps violate the ADAAG §§ 4.7.2,[16] 4.7.5,[17] 4.8.2[18] and the 1987 CBC 2-7101(a)[19] because the slope of the ramp generally is 9.3%, and the slope of the flares is 48%. Defendants claim that this ramp has been replaced with a depressed style ramp that complies with the current ADAAG and CBC standards. Defendants do not dispute that the slope was measured correctly by plaintiff. Thus, the court finds that a barrier did exist. Summary judgment must be granted for defendants on this

---

[16] 4.7.2 Slope: "Slopes of curb ramps shall comply with 4.8.2. The slope shall be measured as shown in Fig. 11. Transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes. Maximum slopes of adjoining gutters, road surface immediately adjacent to the curb ramp, or accessible route shall not exceed 1:20."

[17] 4.7.5 Sides of Curb Ramps: "If a curb ramp is located where pedestrians must walk across the ramp, or where it is not protected by handrails or guardrails, it shall have flared sides; the maximum slope of the flare shall be 1:10 (see Fig. 12(a)). Curb ramps with returned curbs may be used where pedestrians would not normally walk across the ramp (see Fig. 12(b))."

[18] 4.8.2 Slope and Rise: "The least possible slope shall be used for any ramp. The maximum slope of a ramp in new construction shall be 1:12. The maximum rise for any run shall be 30 in (760 mm) (see Fig. 16). Curb ramps and ramps to be constructed on existing sites or in existing buildings or facilities may have slopes and rises as allowed in 4.1.6(3)(a) if space limitations prohibit the use of a 1:12 slope or less."

[19] The 1987 CBC 2-7101(a) provides a highly general statement that "site development and grading shall be designed to provide access to primary entrances and access to normal paths of travel and where necessary to provide access shall incorporate pedestrian ramps, curb ramps, etc."

issue for the purposes of the ADA as the issue is moot if a new
ramp has been installed and the parking spaces re-done to be in
compliance with the ADAAG and recent CBC standards.  Once again,
since defendant has already remedied the barrier, the court must
find its removal was readily achievable and grant summary judgment
to plaintiff under the state law claims.

**4.  Routes of Travel**

Plaintiff claims that a public accommodation must provide
access from the public sidewalks to the store's entrance, and they
claim there is no such access here.[20]  Defendants claim that there
is a 48-inch wide continuous unobstructed path between the store
and public sidewalk.  ADAAG defines an accessible route as "A
continuous unobstructed path connecting all accessible elements and
spaces of a building or facility. . . .  Exterior accessible routes
may include *parking access aisles*, curb ramps, *crosswalks at
vehicular ways*, walks, ramps, and lifts."  ADAAG 3.5 "Definitions"
(emphasis added).  Plaintiff disputes the existence of an access
way, but it appears that he is basing this on the belief that there
needs to be a separate route other than via the parking lot.  There
does not appear to be any such requirement in any of the
regulations plaintiff cites.  Therefore, it does not appear that
they have raised an issue of fact as the existence of such a

_____

[20]  They cite ADAAG §§ 4.1.2(1), 4.3.2(1), 4.1.4.1; 28 C.F.R.
Pt. 36.304(c)(1); and CBC § 2-7101(a) (1987 version).  These all
generally provide that there must be at least one route "provided
within the boundary of the site from public transportation stops,
accessible parking spaces, passenger loading zones if provided, and
public streets or sidewalks, to an accessible building entrance."

1  barrier, and thus summary judgment must be granted for defendants

2  on this issue under the ADA.  Plaintiff has not provide a separate

3  analysis under the Unruh Act or the California DPA and thus the

4  court will grant summary judgment to defendants for those claims

5  as well.

6      5.  **Doors**

7          a.  **The Landing is Not Level**

8      Plaintiff claims that the floor or landing in front of an

9  accessible door must be level, with a slope no greater than 2%.

10 He claims that the store's egress path of travel[21] has a 4 3/4 inch

11 rise with no landing.  His brief cites to ADAAG §§ 4.13(9), 4.3.10

12 and CBC 2-3304(h).  The CBC states that the floor or landing shall

13 not be more than ½-inch lower than the threshold of the doorway,

14 and ADAAG requires that "accessible means of egress" be provided

15 "in the same number as required for exits by local building/life

16 safety regulations."  Defendants' expert claims that only one

17 access route is required by ADAAG and the CBC.  This appears to be

18 correct, as the ADAAG and the CBC only requires that at least one

19 accessible route be provided.  ADAAG § 4.3.10, 4.1.3 (1); CBC 2-

20 3304(a)(1) ("Buildings or structures used for human occupancy shall

21 have at least one approved exit door.").  Thus, summary judgment

22 shall be granted for defendants on this issue under the ADA, the

23 Unruh Act and the California DPA.

24 ////

25 _____

26 [21]  The court believes this refers to the emergency exit at the
    backside of the store.

1         **b.  Panel Handles are Difficult to Use With One Hand**

2      ADAAG § 4.13.9 requires that "[h]andles, pulls, latches,

3 locks, and other operating devices on accessible doors shall have

4 a shape that is easy to grasp with one hand and does not require

5 tight grasping, tight pinching, or twisting of the wrist to

6 operate.  Lever-operated mechanisms, push-type mechanisms, and

7 U-shaped handles are acceptable designs."  Plaintiff claims that

8 the panel type handles are not easy to use with one hand.

9 Defendants, however, claim that the panel handle can be opened

10 without grasping, pinching or twisting of the wrist.  This item was

11 raised in the complaint, <u>see</u> item 9b, and plaintiff and defendants

12 have moved on the issue.

13      The Department of Justice and the U.S. Small Business

14 Administration have issued a publication entitled the <u>ADA Guide for</u>

15 <u>Small Businesses</u>.  Card Dec., Ex. 2 (also available at

16 <u>http://www.ada.gov/smbusgd.pdf</u> (last visited on Feb. 27, 2006)).

17 The publication examines a number of architectural barriers

18 including the types of door handles which are considered to be

19 accessible.  The documents specifically states that panel-type

20 handles require "the user to tightly grasp the handle to open the

21 door.  Many people with mobility disabilities and others with a

22 disability that limits grasping, such as arthritis, find this type

23 of handle difficult or impossible to use" and thus lists the panel-

24 type handles as "not accessible."  <u>ADA Guide for Small Businesses</u>

25 at 8.  While this document does not rise to the level of a

26 regulation, the court is entitled to give appropriate respect to

agency interpretation contained in opinion letters or similar
documents so long as they have the power to persuade. <u>See</u>
<u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000);
<u>Perez-Gonzalez v. Ashcroft</u>, 379 F.3d 783, 793 (9th Cir. 2004). The
reasons given in the document appear to be persuasive and it
comports with the regulations themselves and thus the court finds
that the panel type handle is a barrier as defendants have offered
no persuasive evidence otherwise.

   As set out above, the plaintiff bears the initial burden of
establishing that removal of the barrier is readily achievable.
Plaintiff's expert, Joe Card, has provided a cost analysis of the
different barriers that he identified.  This lists a total cost of
$785.00 to repair the threshold, door pressure, door hardware, and
"door closer."  The report does not break down the cost of
replacing just the door handle.  That said, defendants do not
respond with specific evidence to demonstrate that replacing the
handle is not readily achievable due to the cost or other factors.

   Defendants object to various aspects of the Joe Card report
including a specific objection to the costs estimates as being
"untimely."  Defendants claim that the court ordered that the
expert reports be submitted by April 1st (Card's cost estimates
were not submitted until April 22nd).  However, the order actually
requires that the name of all experts and their reports be
submitted sixty days before the close of discovery, which the order
designates as July 1, 2005.  No matter how you add it up, that does
not make the report due on or before April 22, 2005.  Therefore,

1 | the report was timely submitted.

2    As set out above, the ADA highlights a number of factors to

3 help determine whether the barrier is repairable.  Despite the

4 limited information provided by both parties, it seems plain that

5 replacing a door handle is readily achievable.  42 U.S.C.

6 § 12181(9).  Defendants object to the design plans provided by the

7 Card Report, but it is unnecessary to use those here since the

8 issue is a simple one of replacing a door handle.  Based on the

9 apparent simplicity of the task, the overall size of Pier 1 and the

10 company's resources, there appears to be little question that the

11 removal of this barrier is readily achievable.  Therefore, summary

12 judgment shall be granted for plaintiff on this issue under the

13 ADA, the Unruh Act, and the DPA.

14      **c.  Doorway Threshold**

15    ADAAG § 4.13.8 states "[t]hresholds at doorways shall not

16 exceed 3/4 in (19 mm) in height for exterior sliding doors or ½ in

17 (13 mm) for other types of doors.  Raised thresholds and floor

18 level changes at accessible doorways shall be beveled with a slope

19 no greater than 1:2 (see 4.5.2)."  CBC 2-3304(h) requires any

20 "change in level between 1/4-inch and 1/2-inch shall be beveled

21 with a slope no greater than 1:2.  Change in level greater than ½

22 inch shall be accomplished by means of a ramp."

23    Plaintiff claims that the doorway has a threshold of 1½

24 inches.  Defendant argues that the condition has been modified so

25 that there is now only a ½ inch threshold, thus making the issue

26 moot under the ADA.  Plaintiff disputes this by citing the older

32

1 Card Declaration, thus not providing an adequate response to the
2 newer report by defendants' counsel.   Defendants do not, however,
3 contest that the threshold was not originally greater than ½ inch.
4 Summary judgment must be granted for defendants on this issue under
5 the ADA as the change makes the issue moot, but not under the state
6 claim.   Again, given the repair there appears to be no question of
7 ease of repair.   Thus, the court must find that the condition
8 violated the ADA and the Unruh Act and the DPA.

9     **6.**   **Store's Interior**

10     Plaintiff claims that the doormats at the entrance to the
11 store violate the ADA.   ADAAG § 4.5.3 states: "[i]f carpet or
12 carpet tile is used on a ground or floor surface, then it shall be
13 securely attached; have a firm cushion, pad, or backing, or no
14 cushion or pad; and have a level loop, textured loop, level cut
15 pile, or level cut/uncut pile texture.   The maximum pile thickness
16 shall be ½ in (13 mm) (see Fig. 8(f)).   Exposed edges of carpet
17 shall be fastened to floor surfaces and have trim along the entire
18 length of the exposed edge.   Carpet edge trim shall comply with
19 4.5.2."[22]

20     In defendants' objections to Mr. Card's report, they cite to
21 the website of the Access Board (which includes members of the DOJ
22 who set the ADA regulations) which contains a "Frequently Asked
23 Questions" section.   Therein, the question asked is whether "the

24 _____

[22]   The 1987 CBC -3301(F) also provides that recessed doormats
25 shall be adequately anchored to prevent interference with
wheelchair traffic.   There appears to be no dispute that there are
26 no recessed doormats.

33

1  mats placed on the floor of my office lobby during wet weather are

2  considered carpet that must be firmly attached?"  In response, the

3  Board states:

> No, such mats are "furnishings" not covered by ADAAG.
> However, section 36.211 of the Department of Justice
> rule requires that accessible features be maintained so
> such furnishings cannot degrade the accessible route.
> So-called "walk-off mats" are designed to provide
> traction on wet floors and, as long as they are stable
> and do not pose a tripping hazard, they may actually
> improve the accessibility of a surface. On the other
> hand, loose throw rugs, for example, could decrease the
> accessibility of a surface.

10  http://www.access-board.gov/adaag/about/FAQ.htm#qfs1 at Question

11  4.5.[23]  The district court in White v. Divine Invs. held that these

12  mats were not carpet, and therefore did not violate the ADA by not

13  being pinned down.  2005 WL 2491543, at * 6 (E.D. Cal. 2005)

14  (Damrell, J.).  The doormats pictured are likely provided for the

15  safety of customers to keep them from slipping on wet floors.  They

16  have a trim and are backed with rubber and are meant to stick to

17  the floor.  These mats do not fairly constitute a barrier and

18  therefore summary judgment for defendants is granted under the ADA,

19  Unruh and California DPA.

20  **F.   OBJECTIONS AND MOTION TO STRIKE**

21      Defendants have filed a forty page list of objections and

22  requests to strike evidence submitted by the plaintiff.  The court

23  has already addressed a number of these objections above and will

24  now discuss the single remaining objection relevant to the use of

---

[23]  It is unclear whether the Board's answer should be treated by
this court as persuasive or merely some evidence.

1  the report in the resolution of these motions.

2      Defendants request that the court strike Mr. Card as an expert

3  because they claim that he is not qualified.[24]  Essentially, to

4  report on the matters addressed in the report all that appears to

5  be required is the ability to read a tape measure and use a level.

6  Fed. R. Evid. 702.  Mr. Card is a licensed contractor (Contractor

7  License # 725153) with almost ten years of experience, along with

8  six years working as a disabled access expert.  Card Dec., Ex. 1;

9  Pl.'s Opp'n to Mot. to Strike at 2-3.  He also has received

10  approximately 30-40 hours of training on the CBC, part of which

11  included a brief discussion of the ADA in one of the classes.  Id.

12  This appears to be sufficient for the task of determining whether

13  physical measurements match those in the ADAAG and CBC.

14                                **IV.**

15                               **ORDER**

16      The parties' cross-motions for summary judgment are GRANTED

17  in part and DENIED in part as set forth above.

18      IT IS SO ORDERED.

19      DATED:  April 12, 2006.

20                          /s/Lawrence K. Karlton
                            LAWRENCE K. KARLTON
21                          SENIOR JUDGE
                            UNITED STATES DISTRICT COURT

22

23  _____

24  [24]  Card also comments on the cost of making repairs, and the
    design, but the court did not rely on this testimony for this
25  motion with the exception of the discussion above relative to the
    door handle and therefore need not analyze further whether Card has
26  sufficient expertise in this area.