1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 RONALD WILSON,

                                   NO. CIV. S-04-633 LKK/CMK
12
           Plaintiff,
13                                        <u>AMENDED ORDER</u>
      v.
14                                     **TO BE PUBLISHED**
PIER 1 IMPORTS (US), INC;
15 and MELLON/PIER 1 PROPERTIES
LIMITED PARTNERSHIP I,
16
           Defendants.
17 _____/

18      On April 12, 2006, the court issued an order resolving the

19 parties' cross-motions for summary judgment in the above-

20 captioned case.  The court denied in part and granted in part the

21 parties' cross-motions.  On April 26, 2006, defendants filed a

22 motion to clarify the court's order.  Subsequently, both parties

23 were asked to brief an additional issue, namely, whether a

24 violation of the California Building Code also constitutes a

25 violation of the Americans with Disabilities Act.

26      The court amends the April 12, 2006 as follows.

                                1

Plaintiff, Ronald Wilson, a disabled individual, sues under the ADA and various state disability laws.  He alleges accessibility violations in place at the Pier 1 Imports store in Fairfield, California.  He seeks both injunctive and monetary relief.  The parties have filed cross-motions for summary judgment. I resolve those motions below.[1]

**I.**

**FACTS**[2]

Wilson is a 69 year old male, who has been disabled since 1993.  Wilson Dec. in Supp. of Pl.'s Mot. for Summ. J. (Wilson Dec.) at ¶ 2; Dep. at 25:12-13; 33:20-21; 65:11-25; Pl.'s SUF 1[3]; Wilson Dec. at ¶ 3; Dep. at 115:5-8; 53:15-56:2.; Pl.'s SUF 2.  He has severe degenerative joint disease in his neck, legs, shoulders, and spine; irregular heartbeat; multi-joint arthritis; slight foot drop; and limited range of motion of upper extremities.  Wilson further suffers from gout, deafness, and peripheral neuropathy with symptoms of ALS (a.k.a. Lou Gehrig's Disease).  Wilson Dec. at

---

[1]  Defendants also brought a motion for a prefiling order declaring plaintiff, and plaintiff's attorney, vexatious litigants and a motion directed towards various asserted standing issues.  Both motions were denied.  See Wilson v. Pier 1 Imports (US), Inc., 413 F.Supp.2d 1130 (E.D. Cal. 2006); Wilson v. Pier 1 Imports (US), Inc., 411 F.Supp.2d 1196 (E.D. Cal. 2006).

[2]  All facts are undisputed except where noted.  The defendants have submitted a reply to plaintiff's response to defendants' separate statement of undisputed facts.  This submission is not authorized by the local rules, which only provide for the optional submission of an additional "statement of disputed facts" not a reply to an opposing parties' response.  See Local Rule 56-260.

[3]  Defendants do not dispute many of these facts purely for the "purposes of this motion."

¶ 4; Dep. at 45:22-23; 46:17-18, 23-25; 60:22; Pl.'s SUF 3.  Wilson has no control over his muscles, which are deteriorating faster than doctors thought they would, and is forced to use either a wheelchair or cane (or combination of both) when traveling in public.  Wilson Dec. at ¶ 6; Dep. at 46:17; 53:19-55:2; 55:25-56:7; 47:4-12; Pl.'s SUF 5.  Wilson's condition will worsen over time.  Wilson Dec. at ¶ 7; Dep. at 48:19-21; Pl.'s SUF 6.

Wilson has visited the store at issue approximately every two or three months, Wilson Dec. at ¶ 9; Dep. at 123:17-124:15; Pl.'s SUF 8, and purchased various items (viz., Lilian flutes, salt and pepper racks, Ashlee Mugs).  These purchases were documented with four receipts that he received during his visits of September 8, 2003, March 13, 2004, September 25, 2004, and January 30, 2005.  Wilson Dec. at ¶ 8; Dep. at 117:8-13; 123:17-19; Pl.'s SUF 7.  Overall, Wilson has made approximately 16 visits to the store since September 8, 2003.  Wilson Dec. at ¶ 10; Pl.'s SUF 9.

Wilson was forced to roll over the threshold of the store's entrance backwards with "a lot of expended energy and pain" to get into the store.  Wilson Dec. at ¶ 13; Dep. at 145:9-19; Pl.'s SUF 12.  The curb ramp in existence at the time of Wilson's visits projected into the access aisle and parking space, so his wheelchair would roll away when Wilson tried to get into or out of his vehicle.  Wilson Dec. at ¶ 20' Dep. at 149:25-150:9.  The ramp also "came down too fast," so he had to use extra energy stopping his wheelchair, or risk hitting his car.  Wilson Dec. at ¶ 21; Dep. at 150:11-18; 151:7-13.  Wilson has never fallen off the ramp at

1  the store though he claims the risk is real.  Wilson Dec. at ¶ 23;

2  Dep. at 134:17-19.

3      For the purposes of the ADA, the store was "constructed" in

4  1989.  Hubbard Dec. in Supp. of Pl.'s Mot. For Summ. J. (Hubbard

5  Dec.) at ¶ 4.  It has not been altered, as defined under the ADA

6  and the CBC, since it opened.

7      Pier 1 operates and leases the property.  Mellon/Pier 1

8  Properties Limited Partnership I owns the property.  <u>See</u> Pier 1's

9  Response to Request for Admission No. 1 and Mellon's Response to

10  Request to Admission No. 1, attached as Exhibit 1 to Declaration

11  of Lynn Hubbard, III.  Pier One admits that portions of the store

12  are considered public accommodations under the ADA.  Hubbard Dec.

13  at ¶ 3.

14      Plaintiff always drove to the facility and parked in the

15  accessible parking spaces; he did not access the Store via public

16  streets, sidewalks, or public transportation.  Plaintiff's vehicle

17  was not towed.  Pl.'s Dep. at 114:17-116:5, 153:7-9, 229:9-230:2;

18  Samsel Dec., Ex. A.  Plaintiff never had a problem to report

19  pertaining to accessible parking at the Store.  Pl.'s Dep. at

20  142:3-12; Samsel Dec., Ex. A.  The Store is all one open space.

21  Blackseth Report, page 12.  The Store does not provide restrooms

22  to the public.  <u>Id.</u> at 12-13.

23                              **II.**

24                            **STANDARDS**

25      Summary judgment is appropriate when it is demonstrated that

26  there exists no genuine issue as to any material fact, and that the

4

1  moving party is entitled to judgment as a matter of law.  Fed. R.

2  Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144,

3  157 (1970); Secor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th

4  Cir. 1995).

5       Under summary judgment practice, the moving party

6            [A]lways bears the initial responsibility of
             informing the district court of the basis for
7            its motion, and identifying those portions of
             "the  pleadings,  depositions,  answers  to
8            interrogatories,  and  admissions  on  file,
             together with the affidavits, if any," which
9            it  believes  demonstrate  the  absence  of  a
             genuine issue of material fact.

10

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

12  nonmoving  party  will  bear  the  burden  of  proof  at  trial  on  a

13  dispositive issue, a summary judgment motion may properly be made

14  in  reliance  solely  on  the  'pleadings,  depositions,  answers  to

15  interrogatories, and admissions on file.'"  Id.  Indeed, summary

16  judgment should be entered, after adequate time for discovery and

17  upon motion, against a party who fails to make a showing sufficient

18  to establish the existence of an element essential to that party's

19  case, and on which that party will bear the burden of proof at

20  trial.  See id. at 322.  "[A] complete failure of proof concerning

21  an essential element of the nonmoving party's case necessarily

22  renders all other facts immaterial."  Id.  In such a circumstance,

23  summary judgment should be granted, "so long as whatever is before

24  the  district  court  demonstrates  that  the  standard  for  entry  of

25  summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

26  at 323.

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
6 391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

7    In attempting to establish the existence of this factual
8 dispute, the opposing party may not rely upon the denials of its
9 pleadings, but is required to tender evidence of specific facts in
10 the form of affidavits, and/or admissible discovery material, in
11 support of its contention that the dispute exists.  Fed. R. Civ.
12 P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l
13 Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
14 1998).  The opposing party must demonstrate that the fact in
15 contention is material, i.e., a fact that might affect the outcome
16 of the suit under the governing law, Anderson v. Liberty Lobby,
17 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of
18 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
19 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
20 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,
21 i.e., the evidence is such that a reasonable jury could return a
22 verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see
23 also Cline v. Industrial Maintenance Engineering & Contracting Co.,
24 200 F.3d 1223, 1228 (9th Cir. 1999).

25    In the endeavor to establish the existence of a factual
26 dispute, the opposing party need not establish a material issue of

1   fact conclusively in its favor.  It is sufficient that "the claimed

2   factual dispute be shown to require a jury or judge to resolve the

3   parties' differing versions of the truth at trial."  First Nat'l

4   Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

5   Thus, the "purpose of summary judgment is to 'pierce the pleadings

6   and to assess the proof in order to see whether there is a genuine

7   need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

8   Civ. P. 56(e) advisory committee's note on 1963 amendments); see

9   also International Union of Bricklayers & Allied Craftsman Local

10  Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.

11  1985).

12       In resolving the summary judgment motion, the court examines

13  the pleadings, depositions, answers to interrogatories, and

14  admissions on file, together with the affidavits, if any.  Rule

15  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

16  (9th Cir. 1999).  The evidence of the opposing party is to be

17  believed, see Anderson, 477 U.S. at 255, and all reasonable

18  inferences that may be drawn from the facts placed before the court

19  must be drawn in favor of the opposing party, see Matsushita, 475

20  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

21  655 (1962) (per curiam)); See also Headwaters Forest Defense v.

22  County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).

23  Nevertheless, inferences are not drawn out of the air, and it is

24  the opposing party's obligation to produce a factual predicate from

25  which the inference may be drawn.  See Richards v. Nielsen Freight

26  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d

1  898, 902 (9th Cir. 1987).

2    Finally, to demonstrate a genuine issue, the opposing party

3  "must do more than simply show that there is some metaphysical

4  doubt as to the material facts. . . . Where the record taken as a

5  whole could not lead a rational trier of fact to find for the

6  nonmoving party, there is no 'genuine issue for trial.'"

7  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

**III.**

**PRELIMINARY QUESTIONS**

10    Pending before the court are cross-motions for partial summary

11  judgment filed by both parties.  As best the court can decipher,

12  the parties move only as to the Unruh claim and ADA claim, and

13  thus, the court does not address plaintiff's other state law

14  claims.[4]

15    Defendants move for summary judgment on the grounds that

16  plaintiff lacks standing and that plaintiff's claims are either not

17  barriers as a matter of law, or have been remedied.  Plaintiff

18  cross-moves on the grounds there remain barriers which were

19  identified by plaintiff and plaintiff's expert.

20    Before addressing the merits of the case, however, I address

21  several threshold issues.

---

23  [4]  Plaintiff stipulated to dismiss his claim pursuant to the Unfair
24  Business Practices Act (Section 172000).  As to plaintiff's claim
    under the Health and Safety Act as well as the Disabled Persons
25  Act, the court notes that neither party appears to have moved on
    these claims, much less briefed these claims. The court will only
26  adjudicate those claims which are clearly being moved on.  For this
    reason, the court does not adjudicate these two  state law claims.

**A.   WHICH CLAIMS ARE ACTIONABLE?**

Before resolving the motions, the court must first determine which architectural barriers are properly before the court.  Plaintiff asserts claims based upon the barriers alleged in his complaint and on those identified by his expert, Joe Card. Defendants argue that plaintiff only has standing to bring suit with respect to the barriers he personally encountered and that plaintiff lacks standing as to the violations discovered by Card.

The court recently had the opportunity to address the issue of standing on two prior occasions, Eiden v. Home Depot, CIV. S-04-977 LKK/CMK (E.D. Cal. 2004)and Wilson v. Pier 1 Imports, 413 F. Supp. 2d 1130 (E.D. Cal. 2006).  No purpose would be served by repeating the analysis articulated in Wilson and Eiden. The court therefor adopts by reference the standing analysis as set forth in Wilson and Eiden.

With respect to the Card report and the barriers raised in the complaint, nothing in the ADA requires plaintiff to have personally encountered all barriers in order to seek an injunction to remove those barriers.  See Eiden v. Home Depot, CIV. S-04-977 LKK/CMK (E.D. Cal. 2004); Wilson v. Pier 1 Imports, 413 F. Supp. 2d 1130 (E.D. Cal. 2006).

Nor is plaintiff's suit limited to the barriers that he alleged in his complaint.  As this court previously explained, "[o]nce plaintiff either encountered discrimination or learned of the alleged violations through expert findings or personal observation, he had 'actual notice' that defendant did not intend

1  to comply with the ADA."  See Wilson, 413 F. Supp. 2d at 1134.  As

2  the court further noted,

> "the injury-in-fact requirement of Article III standing
> is easily satisfied by liberally construing it in this
> context.  All that is required is to recognize that the
> injury suffered relative to later-discovered barriers is
> the threat of being subjected to discrimination suffered
> by virtue of the existence of barriers, whether or not
> initially encountered."

7  Id.

8      Having explained that, as a general matter, plaintiff is not

9  bound by the specific ADA claims asserted in his complaint under

10 Constitutional standing principles, the court addresses defendants'

11 argument that plaintiff should not be permitted to incorporate new

12 factual allegations that are not contained within the complaint.

13 Def.'s Opp'n at 7.  Indeed, although plaintiff's complaint need

14 only state a "short and plain statement of the claim showing that

15 the pleader is entitled to relief," see Fed. R. Civ. P. 8(a)(2),

16 plaintiff must still provide "fair notice" for specific claims not

17 asserted in his complaint.

18     The court finds that under the circumstances, the barriers

19 alleged in the Card report are actionable.  The Card report was

20 served on defendants on May 2, 2005, two full months before the

21 close of discovery.  Defendants became aware the Card report at

22 that time, if not before then.

23     As with the issue of standing, the court recently addressed

24 the issue of notice in the Eiden order.  Rather than repeat the

25 analysis here, the court adopts by reference the notice analysis

26 as set forth in Eiden.  Where, as here, plaintiff discovered new

1  alleged violations during the discovery period that were not pled

2  in the complaint, but disclosed to defendants in sufficient time

3  to permit defendants to address them in discovery and by way of law

4  and motion, the court concludes plaintiff is not precluded from

5  raising these allegations on a motion for summary judgment or at

6  trial.[5]

7       For the reasons explained above, the court holds that the

8  claims asserted in the complaint and Card report are actionable and

9  shall be adjudicated by this court.  The court now turns to Unruh

10  Civil Rights Act and ADA violations alleged by plaintiff.

11  **B.   THE UNRUH ACT**

12       Plaintiff seeks summary judgment pursuant to the Unruh Act and

13  this claim is predicated upon defendant's violation of the ADA.

14  See Pl.'s Mot. for Summ. J. at 8:2-5.  He asserts that "a

15  violation of the right of any individual under the Americans with

16  Disabilities Act of 1990 shall also constitute a violation of

17  [Unruh]." Id.  Defendants, meanwhile, argue that the court should

18  decline to exercise jurisdiction over the Unruh claim. Def. Reply

19  at 16.

20       Since the court has found summary judgment for plaintiff

21  appropriate as to at least one barrier, it is necessary for the

22  court to exercise jurisdiction for remedial purposes.  Thus,

23  ////

24  ////

25  _____

26  [5]  That is not to say that amendment of the complaint is not the
better practice – clearly it is.

1  declining jurisdiction is inappropriate.[6]

2      The Unruh Civil Rights Act, codified in California Civil Code

3  § 51, provides that "[a]ll persons . . . are entitled to full and

4  equal accommodations, advantages, facilities, privileges, or

5  services in all business establishments of every kind whatsoever."

6  Cal. Civ. Code § 51(b). The purpose of the Unruh Act "is to compel

7  a recognition of the equality of citizens in the right to the

8  peculiar service offered" by the entities covered by the acts.

9  Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 737 (1982)(quotation

10 omitted); see also Strother v. Southern California Permanente

11 Medical Group, 79 F.3d 859 (9th Cir. 1996).

12     Prior to 1992, to prove a claim under the Unruh Act plaintiff

13 was required to demonstrate that the facility was in violation of

14 Title 24 and that the discrimination he experienced was

15 intentional. See Harris v. Capital Growth Investors XIV, 52 Cal.3d

16 1142, 1175 (1991)("[W]e hold that a plaintiff seeking to establish

17 a case under the Unruh Act must plead and prove intentional

18 discrimination in public accommodations in violation of the terms

19 of the Act"); Lentini v. California Center for the Arts, 970 F.3d

20 837, 847 (9th Cir. 2004).

21     To effectuate its long-stated policy of ridding the state of

22 discrimination, see Warfield v. Peninsula Golf & Country Club, 10

23 Cal.4th 594 (1995), the California legislature amended the Unruh

24

25   [6]  Moreover, declining jurisdiction at this stage would be
26 inappropriate in any event, given the amount of judicial resources
   the court has expended in resolution of the instant motion.

1   Act in 1992 to broaden the scope of its protection.  As amended,

2   § 51 provides that "[a] violation of the right of any individual

3   under the Americans with Disabilities Act of 1990 . . . shall also

4   constitute a violation of this section."  Cal. Civ. Code § 51(f).

5       It is pursuant to this subsection that plaintiff seeks to

6   recover. See Pl.'s Mot. for Summ. J. at 8. Plaintiff  maintains

7   that the violations complained of in his complaint and in the Card

8   report violated both the ADA and California law.  Indeed, both

9   plaintiff and Card noted how each alleged barrier violated the

10  ADAAG, or the California Building Code ("CBC"), or both.

11      While, as a general matter, a plaintiff may rely on both the

12  ADAAG and CBC when pursuing an Unruh claim, the question is whether

13  he may do so where his Unruh claim is based solely on purported

14  violations of the ADA.  This issue raises two different questions:

15  Is plaintiff's Unruh claim proceeding only on the amendment

16  allowing recovery under state law for violation of the federal

17  statute?  If so, may plaintiff rely on the CBC in doing so?

18      As in Eiden, the court concludes that nowhere in plaintiff's

19  filings is there any suggestion of intentional discrimination.

20  Accordingly, the only legal theory available to plaintiff on his

21  Unruh claim is that architectural barriers at Pier 1 violate the

22  ADA. See Eiden, CIV. S-04-977 LKK/CMK (E.D. Cal. 2006). It does not

23  follow, however, that where relief is barred under the ADA, relief

24  is also barred under the Unruh Act.

25      Again, as explained previously in Eiden, the state

26  legislature, unlike Congress, has provided that an individual may

13

1  recover damages for a violation of the Unruh Act.  As in <u>Eiden</u>, I

2  conclude that plaintiff may recover under the Unruh Act, even

3  absent relief under the ADA.[7]  The second question seems equally

4  straight forward.  <u>See</u> <u>id</u>.

5  **C.  THE CBC AND THE ADA**

6       At various places throughout plaintiff's brief and the Card

7  report, reliance is placed on the California Building Code to

8  assert violations of the ADA.  As the parties note, it is clear

9  that the federal statute does not preempt state law where the state

10 law provides "greater or equal protection."  42 U.S.C. § 12201(b).

11 The question here, however, is not whether state law is more

12 protective, but whether a violation of state regulations

13 establishes a barrier for purposes of the ADA.

14      This exact issue was also addressed in <u>Eiden</u>. Rather than

15 repeat the analysis, the court adopts by reference the analysis

16 articulated in <u>Eiden</u> with respect to the ADAAG and the CBC.  As in

17 <u>Eiden</u>, I conclude that compliance with the ADAAG, and not another

18 standard, constitutes compliance with the ADA requirements.

19      For all of the reasons set forth above, the court concludes

20 that the ADAAG constitutes the exclusive standards under Title III

21 of the ADA.  I now turn to plaintiff's ADA claims, since his Unruh

22 Act claims turn on ADA liability.

23 ////

24 _____

25 [7] Under the Unruh Act, a plaintiff can recover statutory damages
   in the amount of three times the actual damages, but in no case
   less than $4,000.00 "for each and every offense."  Cal. Civ. Code
26 § 52(a).

**IV.**

**THE MERITS**

Title III of the ADA prohibits discrimination against individuals on the basis of disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. See 42 U.S.C. § 12182(a).  Title III defines "discrimination" as, among other things, a failure to remove "barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th Cir. 2002).  Plaintiff avers that defendants discriminated against him when they failed to remove certain architectural barriers at the Pier 1 location at issue in this litigation.

**A.  WHAT CONSTITUTES A BARRIER**

Plaintiff avers that defendants violated the ADA by failing to abide by the ADDAG standards.  These regulations are divided into three categories.  The first category of regulations require that newly constructed public accommodations must comply with specific accessibility requirements set forth in the ADAAG.  See 28 C.F.R. Pts. 36.401, 36.406.  The second category of regulations concerns the accessibility requirements imposed on public accommodations altered after January 26, 1992.  See id.  The third category requires the removal of architectural barriers in preexisting public accommodations.  See 28 C.F.R. Pt. 36.304.  Under the ADA's continuing barrier removal obligation, it is discriminatory for owners, operators, lessors or lessees to fail

15

1   to remove architectural barriers that deny disabled persons the

2   goods and services offered to the general public.   Hubbard v. Twin

3   Oaks Health  and Rehabilitation Center, 408 F.Supp.2d 923, 929

4   (E.D. Cal. 2004).   For purposes of the ADA, the Pier 1 facility

5   is a preexisting facility, as it was built prior to 1993.

6   Accordingly, Pier 1 is governed by the third category of

7   regulations and is obligated only to remove existing architectural

8   barriers.

9        In order to make a prima facie case under Title III of the

10  ADA, a plaintiff must prove that (l) he has a disability, (2)

11  defendants' facility is a place of public accommodation, (3) and

12  he was denied full and equal treatment because of his disability.

13  To succeed on a ADA claim of discrimination on account of an

14  architectural barrier, the plaintiff must also prove that (l) the

15  existing facility at the defendants' place of business presents an

16  architectural barrier prohibited under the ADA, and (2) the removal

17  of the barrier is readily achievable.   See 42 U.S.C.

18  § 12182(b)(2)(A)(iv); Id. at 929.   If plaintiff satisfies his

19  burden, the burden shifts to the defendant to show that removal of

20  the barriers is not readily achievable.

21       The presence of structures or other obstacles which do not

22  meet the AADAG standards does not alone make a prima facie ADA

23  violation for facilities built before 1993 because they must also

24  show that the barrier removal is readily achievable.   See 36 C.F.R.

25  Pt. 36.304.   However, non-compliance with ADAAG standards can

26  demonstrate a prima facie barrier, which the defendants may rebut

1  by demonstrating that, despite the non-conformance with the

2  guidelines, the alleged barrier is not actually hindering equal

3  access by the plaintiff.  See, e.g., White v. Cinemark USA, Inc.,

4  2005 WL 1856495, *4 (E.D. Cal. 2005)(Burrell, J.)(citing

5  Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d

6  1357, 1367 (S.D. Fla. 2001)).

7  **B.   WHEN BARRIER REMOVAL IS READILY ACHIEVABLE**

8       The ADA provides that:

9       The term "readily achievable" means easily
         accomplishable and able to be carried out without much
10        difficulty or expense. In determining whether an action
         is readily achievable, factors to be considered include—
11
         (A) the nature and cost of the action needed under this
12        chapter;
         (B) the overall financial resources of the facility or
13        facilities involved in the action; the number of persons
         employed at such facility; the effect on expenses and
14        resources, or the impact otherwise of such action upon
         the operation of the facility;
15        (C) the overall financial resources of the covered
         entity; the overall size of the business of a covered
16        entity with respect to the number of its employees; the
         number, type, and location of its facilities; and
17        (D) the type of operation or operations of the covered
         entity, including the composition, structure, and
18        functions of the workforce of such entity; the
         geographic separateness, administrative or fiscal
19        relationship of the facility or facilities in question
         to the covered entity.

20

21  42 U.S.C.A. § 12181(9); see also 28 C.F.R. Pt. 36.304(a).  Clearly,

22  this is not a bright line rule, but rather involves a "fact

23  intensive inquiry that will rarely be decided on summary judgment."

24  White v. Divine Investments, Inc., 2005 WL 2491543, *6 (E.D. Cal.

25  2005)(Damrell, J.).

26  ////

1    It is plaintiff's burden to demonstrate that barrier removal

2  is readily achievable.  Id.; Pascuiti v. New York Yankees, 87

3  F.Supp.2d 221 (S.D.N.Y. 1999); Colorado Cross Disability Coalition

4  v. Hermanson Family Limited Partnership I, 264 F.3d 999, 1002 (10th

5  Cir. 2001).  In the matter at bar, plaintiff's expert has provided

6  a report which includes a "Cost Analysis for Retrofit per Plans for

7  Barrier Removal."  Plaintiff does not provide any analysis of why

8  these cost should be considered reasonable, or "easily

9  accomplishable and able to be carried out without much difficulty

10  or expense."  28 C.F.R. Pt. 36.304.  He claims that all "a

11  plaintiff must do is present evidence that a suggested method of

12  barrier removal" meets the standard.

13    Defendants maintain that the changes proposed by the

14  plaintiff are not the minimal and small costs that Congress had in

15  mind.  They do not, however, provide any rebuttal design or cost

16  estimates.  Instead, they spend most of their argument disputing

17  the quality of the Card declaration.  They question whether the

18  Card declaration took into account various factors besides the

19  cost, including whether the proposed changes would comply with the

20  applicable codes and regulations, whether the changes would be

21  approved by the City of Fairfield, etcetera.

22    The state of the record is disheartening.  In sum, neither

23  party has addressed the statutory standards.

24  **C.    SPECIFIC BARRIERS**

25    Below, I discuss each of the barriers which plaintiff has

26  raised in his motion for summary judgment.  The complaint also

1  raised a number of issues which plaintiff has not addressed in his

2  motion for summary judgment.  Along with the obvious fact that he

3  has moved for summary judgment and not partial adjudication,

4  plaintiff has also waived his ability to raise these issues by

5  stating in various places that it is "[u]ndisputed that the pending

6  motion for summary judgment addresses the currently known

7  architectural barriers from the store."  See, e.g., Pl.'s Resp. to

8  Defs.' SUF at ¶¶ 16, 38, 56, 63.  Plaintiff further states that it

9  is "[u]ndisputed that Card identified all of the violations that

10  existed at the facility during his inspection" in response to

11  defendants' note that plaintiff's expert report failed to address

12  a number of specific allegations, and that Mr. Card testified that

13  he was aware of no violations not listed in his report.  See, e.g.,

14  id. at ¶¶ 41, 59, 84.  The court therefore grants summary judgment

15  to defendants on all other purported barriers raised in their

16  motion for summary judgment which were not identified in

17  plaintiff's motion.

18  **1.  Accessible Parking Spaces and Access Aisles**

19  Plaintiff sets out a number of arguments about the condition

20  of the accessible parking lot, spaces and their access aisles.

21  Each will be addressed separately.

22  **a.  Tow-Away Signage**

23  Plaintiff argues that the store lacks a sign at the entrance

24  to the off street parking facility (or in front of each accessible

25  parking stall) which warns that "unauthorized vehicles not

26  displaying distinguishing placards or license plates issued for the

1  physically disabled persons may be towed away at the owner's

2  expense."   Pl.'s Mot. for Summ. J. at 5.   The expert report

3  submitted by plaintiff refers only to the CBC and not to the ADAAG.

4  For the reasons discussed in section III (C) of this order, the

5  court need not address the CBC violations.   For this reason, as to

6  this barrier, defendant's motion is GRANTED.

7  **b.   Sign for Each Accessible Parking Space**

8  Plaintiff claims that accessible parking spaces must be

9  reserved with a sign showing the ISA, citing the ADAAG § 4.6.4.

10  This is raised in plaintiff's complaint as item 3(a).   Defendants

11  again claim that compliant tow-away signage is now provided.

12  ADAAG § 4.6.4 provides that "Accessible parking spaces shall

13  be designated as reserved by a sign showing the symbol of

14  accessibility.   See 4.30.7.   Spaces complying with 4.1.2(5)(b)

15  shall have an additional sign "Van-Accessible" mounted below the

16  symbol of accessibility.   Such signs shall be located so they

17  cannot be obscured by a vehicle parked in the space."

18  Defendants have not provided any convincing argument as to why

19  the absence of requisite signage is not a barrier.   Defendants'

20  expert reports that the appropriate signs are provided, and given

21  that it is more recent in time than plaintiff's report, the court

22  must conclude that defendants have cured the defect.

23  Therefor, the court concludes that the issue is moot for the

24  purposes of the ADA.   However, the claim is not moot under the

25  Unruh Act, since damages are still available, and the court is

26  obligated to complete the ADA analysis.   Grove, 407 F. Supp. 2d at

1 | 1131.

2   Having found a barrier, the next step is determining whether

3 | the removal of the barrier is readily achievable.  Given that the

4 | barrier has already been cured, the court must find that it was

5 | readily achievable, and thus that it violated the ADA and

6 | subsequently the Unruh Act.

7   In sum, the court finds that the barrier existed, cure was

8 | readily achievable, and therefore the barrier violated the ADA and

9 | the Unruh Act.

10        **c.  <u>Size of Accessible Stalls</u>**

11   Plaintiff's motion for summary judgment claims that the

12 | "[s]ingle accessible stalls constructed in 1987 must be 108 inches

13 | wide, and have a 96-inch wide access aisle.  Both must be level,

14 | with surface slopes not exceeding 1:150(2%) in all directions.  And

15 | any vertical change in level must not exceed half-an-inch (½")."

16 | Pl.'s. Mot. for Summ. J. 5.

17   It appears that the 96-inch wide access aisle requirement is

18 | found in the ADAAG at 4.1.2.  Plaintiff claims that the "store's

19 | access aisle is 62 inches wide" <u>Id</u>.  Plaintiff's expert report

20 | demonstrates the inadequate size of the space, and defendants'

21 | report does not contradict that.  Defendants claim that the "the

22 | disabled parking space was replaced by two new disabled parking

23 | spaces."  Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 19.  Thus,

24 | summary judgment must be granted for defendants as to the ADA

25 | claim, as it appears the issue is mooted by defendants' conduct.

26 | ////

1    As explained above, the claim is not moot, however, under

2  the Unruh Act and thus the court must determine whether the removal

3  of the barrier was readily achievable.  Given that the barrier has

4  already been removed, the court must find that it was readily

5  achievable, and thus that it violated the ADA and

6  subsequently the Unruh Act.

7       d.  **Slope of Space is too great**

8    Plaintiff claims that the accessible parking space exceeds the

9  slope permitted by the ADAAG §§ 4.5.2[8] and 4.6.3[9].  He claims that

10  the slope is 3.6%, with a cross slope between 2.8% and 3.2% and an

11  abrupt, vertical changes of 2 inches (without a ramp). . . ."

12  Pl.'s Mot. for Summ. J. at 5-6.  Plaintiff cites to his expert

13  report, which includes a photograph.

14    Defendants claim that the barrier does not now exist because

15  "the disabled parking space was replaced by two new disabled

16  parking spaces."  Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 25.

17  They do not dispute that the original space was actually too steep.

18  _____

19  [8]  4.5.2 Changes in Level: "Changes in level up to 1/4 in (6 mm)
   may be vertical and without edge treatment (see Fig. 7(c)). Changes
20  in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be
   beveled with a slope no greater than 1:2 (see Fig. 7(d)).  Changes
21  in level greater than 1/2 in (13 mm) shall be accomplished by means
   of a ramp that complies with 4.7 or 4.8."
22
   [9]  4.6.3 Parking Spaces: "Accessible parking spaces shall be at
23  least 96 in (2440 mm) wide.  Parking access aisles shall be part
   of an accessible route to the building or facility entrance and
24  shall comply with 4.3.  Two accessible parking spaces may share a
   common access aisle (see Fig. 9).  Parked vehicle overhangs shall
25  not reduce the clear width of an accessible route.  Parking spaces
   and access aisles shall be level with surface slopes not exceeding
26  1:50 (2%) in all directions."

1    The court thus finds that a barrier existed.  Summary judgment must

2    be granted for defendants, as it appears the issue is moot for the

3    purposes of the ADA if the proper parking spaces are now in place.

4    For the same reasons noted above, the state claim is not mooted,

5    and the court must again consider whether cure was readily

6    achievable.  Once again, given defendants' conduct, the court

7    concludes that it was and thus that it violated the ADA and

8    subsequently the Unruh Act.

9                    **e.   The Ramp Protrudes into Aisle**

10        Plaintiff claims that the ramp which serves the accessible

11   parking space protrudes into the access aisle and thus violates

12   ADAAG § 4.6.3 by creating too extreme of a slope for the aisle.

13   Plaintiff cites to his expert report, which includes a photograph.

14   This issue was raised in the complaint by item 7(a) of the survey

15   of access code violations.

16        Defendants cite to their expert report, and plaintiff states

17   that it is "unknown" whether a new ramp has been installed and

18   contend that "[i]f this change occurred after Wilson's Rule 56(f)

19   site inspection, then a second inspection is needed."  Pl.'s

20   Resp. to Defs.' SUF 53.  Unfortunately for plaintiff, discovery has

21   closed and no further 56(f) delays are appropriate.  Thus, summary

22   judgment must be granted for defendants on this issue as it is

23   moot, the state of the record being that a ramp has been installed

24   and the parking spaces are in compliance with the ADAAG.

25   Accordingly, the court concludes that the claim is moot under the

26   ADA, that the correction was readily achievable and violation of

1  the state claim is not moot.

2      **3.  <u>Curb Ramps</u>**

3      Plaintiff claims that the curb ramps violate the ADAAG

4  §§ 4.7.2,[10] 4.7.5,[11] and 4.8.2[12] because the slope of the ramp

5  generally is 9.3%, and the slope of the flares is 48%. Defendants

6  claim that this ramp has been replaced with a depressed style ramp

7  that complies with the current ADAAG standards. Defendants do not

8  dispute that the slope was measured correctly by plaintiff. Thus,

9  the court finds that a barrier did exist.

10     Summary judgment must be granted for defendants on this issue

11  for the purposes of the ADA as the issue is moot if a new ramp has

12  been installed and the parking spaces re-done to be in compliance

13  with the ADAAG. Once again, since defendants have already remedied

14  the barrier, the court must find its removal was readily achievable

15  _____

16  [10]  4.7.2 Slope: "Slopes of curb ramps shall comply with 4.8.2.
17  The slope shall be measured as shown in Fig. 11. Transitions from
ramps to walks, gutters, or streets shall be flush and free of
18  abrupt changes. Maximum slopes of adjoining gutters, road surface
immediately adjacent to the curb ramp, or accessible route shall
19  not exceed 1:20."

20  [11]  4.7.5 Sides of Curb Ramps: "If a curb ramp is located where
pedestrians must walk across the ramp, or where it is not protected
by handrails or guardrails, it shall have flared sides; the maximum
21  slope of the flare shall be 1:10 (see Fig. 12(a)). Curb ramps with
returned curbs may be used where pedestrians would not normally
22  walk across the ramp (see Fig. 12(b))."

23  [12]  4.8.2 Slope and Rise: "The least possible slope shall be used
for any ramp. The maximum slope of a ramp in new construction
24  shall be 1:12. The maximum rise for any run shall be 30 in (760
mm) (see Fig. 16). Curb ramps and ramps to be constructed on
25  existing sites or in existing buildings or facilities may have
slopes and rises as allowed in 4.1.6(3)(a) if space limitations
26  prohibit the use of a 1:12 slope or less."

1    and grant summary judgment to plaintiff under the state law claim.

2        **4.  <u>Routes of Travel</u>**

3        Plaintiff claims that a public accommodation must provide

4    access from the public sidewalks to the store's entrance, and they

5    claim there is no such access here.[13]  Defendants claim that there

6    is a 48-inch wide continuous unobstructed path between the store

7    and public sidewalk.  ADAAG defines an accessible route as "A

8    continuous unobstructed path connecting all accessible elements and

9    spaces of a building or facility. . . .  Exterior accessible routes

10   may include *parking access aisles*, curb ramps, *crosswalks at*

11   *vehicular ways*, walks, ramps, and lifts."  ADAAG 3.5 "Definitions"

12   (emphasis added).  Plaintiff disputes the existence of an access

13   way, but it appears that he is basing this on the belief that there

14   needs to be a separate route other than via the parking lot.  There

15   does not appear to be any such requirement in any of the

16   regulations plaintiff cites.  Therefore, it does not appear that

17   they have raised an issue of fact as the existence of such a

18   barrier, and thus summary judgment must be granted for defendants

19   on this issue under the ADA and the Unruh Act.

20   ////

21   ////

22   ////

23   _____

24   [13]  They cite ADAAG §§ 4.1.2(1), 4.3.2(1), 4.1.4.1; and 28 C.F.R.
     Pt. 36.304(c)(1).  These all generally provide that there must be

25   at least one route "provided within the boundary of the site from
     public transportation stops, accessible parking spaces, passenger
     loading zones if provided, and public streets or sidewalks, to an

26   accessible building entrance."

1  **5.** **Doors**

2  **a.** **The Landing is Not Level**

3  Plaintiff claims that the floor or landing in front of an

4  accessible door must be level, with a slope no greater than 2%.

5  He claims that the store's egress path of travel[14] has a 4 3/4 inch

6  rise with no landing.  His brief cites to ADAAG §§ 4.13(9), and

7  4.3.10.  The ADAAG requires that "accessible means of egress" be

8  provided "in the same number as required for exits by local

9  building/life safety regulations."  Defendants' expert claims that

10  only one access route is required by ADAAG.  This appears to be

11  correct, as the ADAAG only requires that at least one accessible

12  route be provided.  ADAAG § 4.3.10, 4.1.3 (1).  Thus, summary

13  judgment shall be granted for defendants on this issue under the

14  ADA and the Unruh Act.

15  **b.** **Panel Handles are Difficult to Use With One Hand**

16  ADAAG § 4.13.9 requires that "[h]andles, pulls, latches,

17  locks, and other operating devices on accessible doors shall have

18  a shape that is easy to grasp with one hand and does not require

19  tight grasping, tight pinching, or twisting of the wrist to

20  operate.  Lever-operated mechanisms, push-type mechanisms, and

21  U-shaped handles are acceptable designs."  Plaintiff claims that

22  the panel type handles are not easy to use with one hand.

23  Defendants, however, claim that the panel handle can be opened

24  without grasping, pinching or twisting of the wrist.  This item was

25  _____

26  [14]  The court believes this refers to the emergency exit at the
backside of the store.

1  raised in the complaint, <u>see</u> item 9b, and plaintiff and defendants
2  have moved on the issue.

3      The Department of Justice and the U.S. Small Business
4  Administration have issued a publication entitled the <u>ADA Guide for</u>
5  <u>Small Businesses</u>.  Card Dec., Ex. 2 (also available at
6  <u>http://www.ada.gov/smbusgd.pdf</u> (last visited on Feb. 27, 2006)).
7  The publication examines a number of architectural barriers
8  including the types of door handles which are considered to be
9  accessible.  The documents specifically states that panel-type
10  handles require "the user to tightly grasp the handle to open the
11  door.  Many people with mobility disabilities and others with a
12  disability that limits grasping, such as arthritis, find this type
13  of handle difficult or impossible to use" and thus lists the panel-
14  type handles as "not accessible."  <u>ADA Guide for Small Businesses</u>
15  at 8.  While this document does not rise to the level of a
16  regulation, the court is entitled to give appropriate respect to
17  agency interpretation contained in opinion letters or similar
18  documents so long as they have the power to persuade.  <u>See</u>
19  <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000);
20  <u>Perez-Gonzalez v. Ashcroft</u>, 379 F.3d 783, 793 (9th Cir. 2004).  The
21  reasons given in the document appear to be persuasive and it
22  comports with the regulations themselves and thus the court finds
23  that the panel type handle is a barrier as defendants have offered
24  no persuasive evidence otherwise.

25      As set out above, the plaintiff bears the initial burden of
26  establishing that removal of the barrier is readily achievable.

1   Plaintiff's expert, Joe Card, has provided a cost analysis of the
2   different barriers that he identified.  This lists a total cost of
3   $785.00 to repair the threshold, door pressure, door hardware, and
4   "door closer."  The report does not break down the cost of
5   replacing just the door handle.  That said, defendants do not
6   respond with specific evidence to demonstrate that replacing the
7   handle is not readily achievable due to the cost or other factors.

8       Defendants object to various aspects of the Joe Card report
9   including a specific objection to the costs estimates as being
10  "untimely."  Defendants claim that the court ordered that the
11  expert reports be submitted by April 1st (Card's cost estimates
12  were not submitted until April 22nd).  However, the order actually
13  requires that the name of all experts and their reports be
14  submitted sixty days before the close of discovery, which the order
15  designates as July 1, 2005.  No matter how you add it up, that does
16  not make the report due on or before April 22, 2005.  Therefore,
17  the report was timely submitted.

18      As set out above, the ADA highlights a number of factors to
19  help determine whether the barrier is repairable.  Despite the
20  limited information provided by both parties, it seems plain that
21  replacing a door handle is readily achievable.  42 U.S.C.
22  § 12181(9).  Defendants object to the design plans provided by the
23  Card Report, but it is unnecessary to use those here since the
24  issue is a simple one of replacing a door handle.  Based on the
25  apparent simplicity of the task, the overall size of Pier 1 and the
26  company's resources, there appears to be little question that the

1   removal of this barrier is readily achievable.  Therefore, summary

2   judgment shall be granted for plaintiff on this issue under the

3   ADA, and the Unruh Act.

4          **c.  <u>Doorway Threshold</u>**

5          ADAAG § 4.13.8 states "[t]hresholds at doorways shall not

6   exceed 3/4 in (19 mm) in height for exterior sliding doors or ½ in

7   (13 mm) for other types of doors.  Raised thresholds and floor

8   level changes at accessible doorways shall be beveled with a slope

9   no greater than 1:2 (see 4.5.2)."

10         Plaintiff claims that the doorway has a threshold of 1½

11  inches.  Defendants argue that the condition has been modified so

12  that there is now only a ½ inch threshold, thus making the issue

13  moot under the ADA.  Plaintiff disputes this by citing the older

14  Card Declaration, thus not providing an adequate response to the

15  newer report by defendants' counsel.  Defendants do not, however,

16  contest that the threshold was not originally greater than ½ inch.

17  Summary judgment must be granted for defendants on this issue under

18  the ADA as the change makes the issue moot, but not under the state

19  claim.  Again, given the repair there appears to be no question of

20  ease of repair.  Thus, the court must find that the condition

21  violated the ADA and the Unruh Act.

22         **6.  <u>Store's Interior</u>**

23         Plaintiff claims that the doormats at the entrance to the

24  store violate the ADA.  ADAAG § 4.5.3 states: "[i]f carpet or

25  carpet tile is used on a ground or floor surface, then it shall be

26  securely attached; have a firm cushion, pad, or backing, or no

cushion or pad; and have a level loop, textured loop, level cut

pile, or level cut/uncut pile texture.  The maximum pile thickness

shall be ½ in (13 mm) (see Fig. 8(f)).  Exposed edges of carpet

shall be fastened to floor surfaces and have trim along the entire

length of the exposed edge.  Carpet edge trim shall comply with

4.5.2."

    In defendants' objections to Mr. Card's report, they cite to

the website of the Access Board (which includes members of the DOJ

who set the ADA regulations) which contains a "Frequently Asked

Questions" section.  Therein, the question asked is whether "the

mats placed on the floor of my office lobby during wet weather are

considered carpet that must be firmly attached?"  In response, the

Board states:

> No, such mats are "furnishings" not covered by ADAAG.
> However, section 36.211 of the Department of Justice
> rule requires that accessible features be maintained so
> such furnishings cannot degrade the accessible route.
> So-called "walk-off mats" are designed to provide
> traction on wet floors and, as long as they are stable
> and do not pose a tripping hazard, they may actually
> improve the accessibility of a surface. On the other
> hand, loose throw rugs, for example, could decrease the
> accessibility of a surface.

http://www.access-board.gov/adaag/about/FAQ.htm#gfs1 at Question

4.5.[15]  The district court in White v. Divine Invs. held that these

mats were not carpet, and therefore did not violate the ADA by not

being pinned down.  2005 WL 2491543, at * 6 (E.D. Cal. 2005)

(Damrell, J.).  The doormats pictured are likely provided for the

---

[15]  It is unclear whether the Board's answer should be treated by
this court as persuasive or merely some evidence.

1   safety of customers to keep them from slipping on wet floors.  They

2   have a trim and are backed with rubber and are meant to stick to

3   the floor.  These mats do not fairly constitute a barrier and

4   therefore summary judgment for defendants is granted under the ADA,

5   and the Unruh  Act.

6   **F.    OBJECTIONS AND MOTION TO STRIKE**

7        Defendants have filed a forty page list of objections and

8   requests to strike evidence submitted by the plaintiff.  The court

9   has already addressed a number of these objections above and will

10  now discuss the single remaining objection relevant to the use of

11  the report in the resolution of these motions.

12       Defendants request that the court strike Mr. Card as an expert

13  because they claim that he is not qualified.[16]  Essentially, to

14  report on the matters addressed in the report all that appears to

15  be required is the ability to read a tape measure and use a level.

16  Fed. R. Evid. 702.  Mr. Card is a licensed contractor (Contractor

17  License # 725153) with almost ten years of experience, along with

18  six years working as a disabled access expert.  Card Dec., Ex. 1;

19  Pl.'s Opp'n to Mot. to Strike at 2-3.  He also has received

20  approximately 30-40 hours of training on the CBC, part of which

21  included a brief discussion of the ADA in one of the classes.  Id.

22  This appears to be sufficient for the task of determining whether

23

_____

24  [16]  Card also comments on the cost of making repairs, and the
    design, but the court did not rely on this testimony for this
25  motion with the exception of the discussion above relative to the
    door handle and therefore need not analyze further whether Card has
26  sufficient expertise in this area.

physical measurements match those in the ADAAG.

**V.**

**ORDER**

The parties' cross-motions for summary judgment are GRANTED in part and DENIED in part as set forth above.[17]  Defendants' motion to clarify the court's April 12, 2006 order is now rendered moot.

IT IS SO ORDERED.

DATED:  July 7, 2006.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[17]   The court reserves judgment on the award of damages.  Since plaintiff's claims under the California Health and Safety Code and the Disabled Persons Act have yet to be resolved, it appears premature for the court to award damages.  Once all claims are resolved, plaintiff may move for an award of damages.